1
2
3
4
5
6
7
8
9
10
11

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

12
13
14
15
16
17
18
19

UNITED STATES OF AMERICA,

Plaintiff,

v.

MAZEN AHMAD ALZOUBI,

Defendant.

Case No. 14-cr-3325-BAS

**ORDER GRANTING GOVERNMENT'S MOTION TO REVOKE RELEASE ORDER AND DETAIN DEFENDANT**

**[ECF No. 88]**

20
21
22
23
24
25
26
27
28

Defendant Mazen Ahmad Alzoubi stands charged with mail fraud under 18 U.S.C. § 1341. The Government asserts that "[b]eginning in approximately 2012, Defendant devised a scheme to fraudulently obtain control of real property owned by others, in order to sell the property to unsuspecting third parties and collect the proceeds of that sale." (Gov't's Mot. 2:17–25.) "In at least ten instances, Defendant's scheme [allegedly] succeeded, and he arranged for unwitting third-party buyers or lenders to purchase or encumber the properties, diverting at least $2.2 million in proceeds away from the true owners to bank accounts he controlled." (*Id.* at 2:26–3:8.) //

14cr3325

- 1 -

On May 19, 2015, following several hearings, Defendant's bond packet was completed and accepted by the magistrate judge.  Two days later, the magistrate judge denied the Government's oral motion for detention based on risk of flight, danger, and 18 U.S.C. § 3142(f)(2)(B).  Pending before the Court is the United States of America's motion seeking *de novo* review of the order releasing Defendant and to detain Defendant as a risk of flight and danger to society.  Defendant opposes.

The Court heard argument from the parties on June 1, 2015, and incorporates all findings made during the hearing in this order.  For the following reasons, the Court **GRANTS** the Government's motion.

## I.       STANDARD OF REVIEW

"The Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.*, requires the release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community." *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991).  "Only in rare circumstances should release be denied, and doubts regarding the propriety of release should be resolved in the defendant's favor." *Id.*  "On a motion for pretrial detention, the government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk, and by clear and convincing evidence that the defendant poses a danger to the community." *Id.*

In determining whether there are conditions of release that will reasonably assure the appearance of the defendant as required and the safety of any other person and the community, the following factors warrant consideration: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g).  The "history and characteristics" of the defendant include "the person's character, physical and mental condition, family ties,

14cr3325

1   employment, financial resources, length of residence in the community, community

2   ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record

3   concerning appearance at court proceedings[.]" *Id.* "Of these factors, the weight of the

4   evidence is the least important, and the statute neither requires nor permits a pretrial

5   determination of guilt." *Gebro*, 948 F.2d at 1121.

6        A magistrate judge's detention rulings are subject to *de novo* review by the

7   district court. *See United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990). The

8   district court should review the evidence presented to the magistrate judge and make

9   its own independent determination. *See id.* at 1193. The district court may also hold

10  an evidentiary hearing. *See id.* "However, there is no requirement of live testimony

11  by the government at a detention hearing." *United States v. Cabrera-Ortigoza*, 196

12  F.R.D. 571, 574 (S.D. Cal. 2000). At a detention hearing, the government and

13  defendant may both proceed "by proffer or hearsay." *United States v. Winsor*, 785 F.2d

14  755, 756 (9th Cir. 1986) (per curiam); *see also Cabrera-Ortigoza*, 196 F.R.D. at 573-

15  74. "The use of proffers and hearsay evidence are a necessary ingredient to the

16  effective working of the Bail Reform Act, and prevention of a mini trial, or an early

17  discovery expedition[,] further facilitates those goals." *Cabrera-Ortigoza*, 196 F.R.D.

18  at 575-76. If there is a question as to the accuracy of a proffer, the court "is authorized

19  to reconcile the demand for speed in these proceedings and the reliability of the

20  evidence by selectively insisting on the production of evidentiary sources." *United*

21  *States v. Terrones*, 712 F. Supp. 786, 791 (S.D. Cal. 1989). But "absent something

22  credible to challenge the reliability or correctness of the government's proffer, the

23  Court need not compel live witnesses to testify." *Cabrera-Ortigoza*, 196 F.R.D. at 575.

24

25  **II.   DISCUSSION**

26       The Government argues that it satisfies its burden as to each § 3142(g) factor.

27  Defendant responds by arguing that the Government fails to meet its burden. The

28  parties focus heavily on Defendant's history and characteristics.

1    Upon reviewing all of the evidence proffered and arguments presented, the Court

2    finds that Defendant presents a serious flight risk and no condition or combination of

3    conditions will reasonably assure his appearance as required or the safety of the

4    community.  *See* 18 U.S.C. § 3142(b); *United States v. Hir*, 517 F.3d 1081, 1086 (9th

5    Cir. 2008).

6

7        **A.    Risk of Flight**

8    Much of the focus regarding whether Defendant poses a flight risk centers

9    around Defendant's family and community ties.

10   Defendant presents evidence that he relocated to the United States in 1999 with

11   his family, went to high school and college in the United States, and was employed as

12   a loan processor until he founded his own real estate investment company.  (Def.'s

13   Opp'n 9:13–24.)  Defendant does not explicitly assert that he has continuously lived

14   in the United States since 1999, and the Government described that assertion as unclear

15   at best during argument.  Defendant also lists numerous family ties he has in the United

16   States, including his siblings and their respective families, uncles, cousins, and in-laws.

17   (*Id.* at 9:25–10:14.)

18   However, as Defendant himself concedes, his parents, wife, and son currently

19   reside outside the United States in Jordan.  (Def.'s Opp'n 10:15–24.)  Prior to their

20   move to Jordan, Defendant's wife and son lived in Mexico.  (*Id.*)  Defendant's wife,

21   son, and parents are presumably the family members to whom he is closest.  In other

22   words, the family members Defendant is closest to do not live in the United States, but

23   rather live in Jordan.  And though Defendant states that his wife and son "should be

24   able to come to the US in the near future[,]" that is hardly a certainty; rather, their

25   immigration status is more accurately precarious at best as Defendant's status in the

26   United States as a Jordanian national is in jeopardy.

27   Both parties agree that Defendant is facing potentially over 10 years

28   imprisonment based on the federal charges brought.  (Gov't Mot. 10:14–27; Def.'s

14cr3325

Opp'n 8:18.)  That he is facing charges by both federal and state authorities only adds to the gravity of Defendant's situation.  Defendant's co-defendant Daniel Deaibes has entered a guilty plea, and co-schemer Mohamed Daoud (charged separately) has provided additional insider information to the Government.  (Gov't Mot. 11:2–8.) The Government alleges Defendant illegally obtained $2.2 million in this scheme, which is now being held overseas.  The Government further alleges Defendant has substantial financial resources from his family's wealth in Jordan, an allegation Defendant does not dispute.  These financial resources coupled with the circumstances described above, easily present by a preponderance of the evidence that Defendant poses a substantial flight risk.  *See Gebro*, 948 F.2d at 1121.

### B.    Danger to Community

Danger to the community may include pecuniary or economic harm.  *United States v. Reynolds*, 956 F.2d 192, 192-93 (9th Cir. 1992).  The Government argues Defendant's past conduct, including twice attempting to steal hundreds of thousands of dollars from unsuspecting strangers' bank accounts, the pending state charges for commercial burglary and forgery, and his history of failing to appear in the aforementioned state-court criminal action militate in favor of detention.  (Gov't Mot. 13:12–14:25.)

The Government presents evidence that *while on pretrial release* in San Bernardino, Defendant "arranged to sell at least eight stolen properties, and succeeded in selling at least three of them." (Gov't Mot. 14:26–15:9.)  In perpetrating the fraud, Defendant is alleged to have: (1) posed as an attorney representing the title company and property seller using a false name; (2) created and filed fraudulent documents in court and the county recorder's offices; and (3) appeared before a notary in order to pose as that notary and forge the notary stamp.  (*Id.*)

The Government also presents evidence that Defendant has no reservations in submitting fabricated pay stubs to the Court.  (Gov't Mot. 5:9–8:11.)  According to

14cr3325

the Government, it cross-referenced the information in the pay stubs submitted with the Internal Revenue Service, the State of California, and the California Employment Development Department, and no records of any tax withholdings or wages were found. (*Id.*) Defendant's response appears to recognize the fabricated paperwork. (Def.'s Opp'n 11:23–12:6.) His only explanation, that because he was in custody, "he could not have had the direct role in the creation of the pay stubs that the government suspects and alleges," was undermined by the Government's proffer that he was released before the false pay stubs were ordered. (*See id.*) It appears to be undisputed that fabricated documents with false information were submitted to the Court in order to secure his release.

Lastly, insofar as the Government provides information regarding Defendant's two prior arrests for driving under the influence—which included one conviction—and history of being a "regular drug user" as considerations that weigh in favor finding that Defendant is a danger to the community, the Court finds that information unpersuasive. Defendant's danger to the community does not arise from his alcohol or drug use, but rather the risk that he will commit fraud at the economic and pecuniary expense of others.

Consequently, by clear and convincing evidence, the Court finds that Defendant poses an economic danger to the community.  No condition or combination of conditions can reasonably assure Defendant's appearance as required and the safety of the community. *See Gebro*, 948 F.2d at 1121.

## III.   CONCLUSION[1]

Based on the totality of the evidence proffered, the Court finds that the Government demonstrates by a preponderance of the evidence that Defendant poses a

---

[1] The parties dispute the significance of Defendant's relationship with Mr. Daoud, with Defendant contending that there is no evidence of any tampering. (Def.'s Opp'n 11:6–21.) The Court finds there is ample evidence before it to reach its conclusion without considering the Government's allegations of witness tampering.

14cr3325

1  substantial flight risk.  The Court further finds that the Government also demonstrates

2  by clear and convincing evidence that Defendant poses an economic danger to the

3  community.  Consequently, the Court finds that the bail package is insufficient to

4  assure Defendant's appearance as required in this matter.

5       In light of the foregoing, the Court **GRANTS** the Government's motion in its

6  entirety.  Accordingly, the Court **ORDERS** the revocation of the release order and

7  further **ORDERS** Defendant detained without bail in accordance with 18 U.S.C. §

8  3142(i).

9       **IT IS SO ORDERED.**

10

11  **DATED: June 1, 2015**

12  **Hon. Cynthia Bashant**
**United States District Judge**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14cr3325